Argued December 18; reversed and remanded January 27, 1948

## GARNER *v.* GARNER, now Mary L. Williams
### 189 P. (2d) 397

*Wesley A. Franklin,* of Portland, argued the cause for appellant. On the brief were Lord, Anderson & Franklin, of Portland.

*William C. Palmer,* of Portland, argued the cause for respondent. With him on the brief was A. F. Knight, of Portland.

Before ROSSMAN, Chief Justice, and KELLY, BAILEY, HAY and WINSLOW, Justices.

HAY, J.

Joseph Garner, plaintiff, and Mary L. Garner (now Mary L. Williams) defendant in this case, were formerly husband and wife. In 1939, Joseph brought suit for divorce against Mary in Multnomah County. Mary was personally served with summons, but made

no appearance, and a default decree was entered in favor of Joseph on September 14, 1939. During the pendency of the suit, Joseph conveyed to Mary his interest in their home in Portland. Despite Mary's default, the decree awarded her permanent alimony, using the following language:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiff as he has voluntarily agreed to do, pay the defendant towards her support and maintenance the sum of twenty and no/100 ($20.00) dollars monthly through the clerk of this Court each and every month so long as the plaintiff is regularly employed."

From time to time writs of execution have issued upon the decree, and the sheriff of Multnomah County, by virtue of such writs, has, by garnishment upon Joseph's employers, levied and collected sums aggregating $127.29. On October 21, 1940, Mary married Elzie B. Williams. On May 31, 1946, a further execution issued upon the decree. On October 8, 1946, Joseph moved the court to amend the decree by deleting that portion providing for the payment of permanent alimony, or, in the alternative, by relieving him from payment of such alimony accruing subsequent to the date of Mary's marriage to Williams. The motion was supported by Joseph's affidavit, in which, among other matters, he alleged that he had resided with his wife for a period of twenty-eight years prior to entry of the decree of divorce, and, for that reason, he had desired to make some provision for her; that he was then unemployed and for some time had been on public relief; that consequently he conveyed to her the property constituting their home, with the furniture; that the reasonable value of the dwelling-house was upwards of $2,500, and, of the furnishings, more than $500; that,

at the time such property was conveyed to Mary, it was understood that she should make no claim for alimony; that, without his knowledge, a provision was made in the decree that he should pay her $20 per month, which he had never intended to do; and that, on October 21, 1940, Mary married Williams and was then living with and being supported by him. He alleged further that, on October 21, 1939, which was about five weeks subsequent to the entry of the divorce decree, Mary wrote him as follows:

"* * * so I want to ask your forgiveness for what I have done to you. Please forgive me for my swearing, lying, nagging and for ordering you out of *our home,* and anything else which I have failed to mention, and I pray that somewhere along life's way God will give me another chance to prove to you how sorry I really am."

In opposition to the motion, Mary filed affidavits by herself and by Mr. William Charack, who was Joseph's attorney in the divorce suit. Mr. Charack's affidavit stated that, to the best of his recollection, knowledge and belief, he discussed with Joseph, before the decree of divorce was obtained, the matter of his agreeing to pay Mary $20 per month. Mary's affidavit contradicted Joseph's as to the value of his interest in the real property, which interest he conveyed to her, alleging that such value was only about $165; stated that, at the time of the divorce, she was in ill health and had recently undergone a major surgical operation as a charity patient in the Multnomah County Hospital; that, while the divorce suit was pending, she had several conversations with plaintiff's attorney, and was informed by him that plaintiff felt that she was entitled to something by way of alimony and had instructed the attorney to take the necessary steps

554

to have the decree include an award of $20 a month; that she, at that time, had no funds with which to employ an attorney; and that Joseph was and had been working on the WPA and receiving $85 per month in wages. She does not deny having written the letter set forth above, but states simply: "I do not have in mind writing the note which is mentioned in his Affidavit."

The transcript of the testimony which was taken at the hearing in the divorce suit includes the following, which is a portion of Joseph's testimony:

"Q. Now, you have voluntarily offered to contribute in some way to your wife's support,— A. She told me to get out or she would turn me out; so I went out in the garage and I stayed up two days and two nights until I could get the wheels under the trailer so I could live in it. I told her I would give her $20.00 a month and the property and everything; give her everything. Q. And you are willing to do that? A. Yes. THE COURT: Q. How much do you make a month? A. I am not making anything right now. I was on WPA and I was laid off. Q. How do you expect to pay her this $20.00 a month? A. Well, I can't pay it if I haven't got it. Q. Does she understand that? A. Yes. Q. How is she going to live? A. She told me that she would accept that; to give it and get out. * * *"

After a hearing upon the motion, the court modified the decree by relieving Joseph from the obligation to pay any alimony accrued or accruing subsequent to October 10, 1946, (the date on which an order to show cause was served on Mary) but retaining in full force and effect all other terms and conditions of the decree, including Joseph's liability for any unpaid portion of alimony accrued up to and including October 9, 1946. Plaintiff appeals.

The principal contention which Joseph makes upon this appeal is that the circuit court was without jurisdiction to award alimony to Mary, who was the party in fault.

A circuit court, although a court of general jurisdiction, is, when "exercising a special power conferred upon it by statute, and not according to the course of the common law", a court of special and inferior jurisdiction, such jurisdiction being limited by the terms of the statute conferring the power. *Northcut v. Lemery*, 8 Or. 316, 322. At common law, the secular courts had no jurisdiction to take cognizance of suits for divorce *a vinculo matrimonii*. Jurisdiction of such causes, in the United States, is strictly of statutory origin. *DeVall v. DeVall*, 57 Or. 128, 136, 109 P. 755, 110 P. 705; *State ex rel. v. Tolls*, 160 Or. 317, 323, 85 P. (2d) 366, 119 A. L. R. 1370; *Howard v. Howard*, 164 Or. 689, 698, 103 P. (2d) 756; Warren's Schouler Divorce Manual, sections 205, 245; 17 Am. Jur., Divorce and Separation, section 513.

The Oregon statute authorizes the court, when declaring the dissolution of a marriage, to provide in the decree, among other matters, as follows:

"For the recovery from the party in fault [of] such amount of money, * * * as may be just and proper for such party to contribute to the maintenance of the other; * * *."
Section 9-914 (3), O. C. L. A., as amended by chapter 228, section 1, Or. L. 1947.

In construing this section, this court has held that alimony may be awarded only against a party in fault. *Miller v. Miller*, 65 Or. 551, 555, 131 P. 308, 133 P. 86; *Hengen v. Hengen*, 85 Or. 155, 164, 166 P. 525; *State ex rel. v. Tolls*, supra; *Howard v. Howard*, supra.

The decree in this case, which granted a divorce to Joseph, was in effect an adjudication of the fact that Mary was the party in fault. It would seem, therefore, in view of the statute from which we have quoted above, that, in awarding permanent alimony to Mary, the court erred.

Counsel for Mary argues, however, that the decree was a consent decree and, as such, as conclusive upon the parties as would be a decree rendered after a hearing on the merits. In support of this argument, he cites *Crow v. Crow,* 70 Or. 534, 546, 139 P. 854, and *State ex rel. Dean v. Dean,* 136 Or. 694, 698, 300 P. 1027, 86 A. L. R. 79.

■ *Crow v. Crow,* supra, was not a divorce case, but was a suit for an accounting and to require the defendants to convey to the plaintiff certain real property. The court held, *inter alia,* that the plaintiff was concluded by a decree which was entered, upon his written stipulation, in a former suit between the same parties, saying, in part:

> "Where a judgment is entered by agreement of the parties, or upon confession of the defendant in an action pending *wherein the court has jurisdiction,* the judgment so rendered is conclusive upon the parties, and its effect is the same as it would have been if it had been rendered after a trial on the merits". (Italics ours.)

In *State ex rel. Dean v. Dean,* supra, the defendant was present in court, personally and by attorneys, when the decree was rendered. The suit was for divorce, and the parties had entered into an agreement settling their property rights, in which agreement the defendant had agreed to pay plaintiff, as alimony for the support of herself and an unborn child, $200 per

month so long as she remained single. The decree awarded alimony to the plaintiff in accordance with such agreement. After making the monthly payments required for some four years, the defendant refused to pay further and moved to set aside the whole of the decree except that part thereof granting a divorce to plaintiff. The motion was overruled, and, on appeal, it was held that, while, as a general principle of law, a decree or judgment on a matter outside the issue raised by the pleadings is a nullity, nevertheless a consent decree is controlled by section 2-1201, Oregon Code 1930 (section 6-401, O. C. L. A.) which provides that:

"On the confession of the defendant, with the assent of the plaintiff or his attorney, judgment may be given against the defendant in any action, before or after answer, for any amount or relief not exceeding or different from that demanded in the complaint."

The defendant was held bound by his consent, but it is to be noted that the circumstances of the case brought him clearly within the provisions of the statute above quoted, and moreover, that he was also the party in fault.

*Griffith v. Griffith,* 143 Or. 276, 22 P. (2d) 323, cited by respondent, was a case having some similarity to the case at bar. In that case the husband brought suit for divorce and the wife defaulted, whereupon a decree was entered granting him a divorce and awarding the wife a certain sum monthly as permanent alimony. This award was made in accordance with an agreement executed by both husband and wife. The husband paid the monthly installments for about two years, but defaulted thereafter, and, for such default, was adjudged to be in contempt of court. Upon appeal, this court held that it could make no ruling upon the ques-

tion of whether or not the award of alimony to the wife was an erroneous exercise of jurisdiction, as the record before it did not disclose sufficient data to enable it to determine that plaintiff was not actually in fault, although having been granted a divorce. Citing *Crumbley v. Crumbley,* 94 Or. 617, 186 P. 423, the court said: "The party who prevails in the trial court may be the party in fault."

■ In the Crumbley case, the decree granted a divorce to the plaintiff and made a disposition of the real property of the parties. The plaintiff appealed from that portion of the decree only which declared the defendant to be the owner in severalty of certain parcels of land. It was held that, upon such appeal, this court would examine the whole record, but only for the purpose of determining whether or not the plaintiff was equitably entitled to further relief. Upon consideration of the whole record, the court found that the parties were *in pari delicto* and that neither was entitled to relief in a court of equity. It was unable to disturb the decree in so far as it awarded a divorce to plaintiff, as no appeal had been taken from that part. However, as to the part from which plaintiff had appealed, it held that her conduct, as disclosed by the testimony, disqualified her from obtaining even so much relief as she did, and that she was not entitled to further relief. The court felt that, in the circumstances, it was obliged to leave the parties where it found them. The decree was, therefore, affirmed. It is to be observed that the case was on appeal from the original decree. In such an appeal, the question of who was the party in fault may be determined by this court as upon a hearing *de novo*. However, in the case at bar, no appeal was taken from the original decree.

That decree, holding that Mary was the party in fault, granted a divorce to Joseph. Such holding, in the absence of a timely appeal, became *res judicata*. The same situation was present in *Griffith v. Griffith,* supra (143 Or. 276, 22 P. (2d) 323). To the extent that the opinion in that case held that the question of who was the party in fault was subject to reexamination, it must be considered as overruled.

■ Respondent suggests that appellant, having accepted the benefits of the divorce decree, is estopped from seeking to be relieved of its burdens which he voluntarily assumed. *Griffith v. Griffith,* supra, is relied upon in support of this assertion. In that case the court quoted with approval from the decision of the Supreme Court of Montana in the case of *Grush v. Grush,* 90 Mont. 381, 3 P. (2d) 402, as follows:

> "The plaintiff having accepted the benefit of the decree, entered on his motion and with his consent, in so far as it awards the divorce, he should not be permitted to be relieved from its burdens agreed to by him."

The Montana court correctly held that an award of permanent alimony to a wife for whose offense a divorce was granted is void, although the parties consented thereto. The plaintiff, in whose favor a divorce had been granted, moved to annul that portion of the decree which required him to pay alimony to his former wife, the party in fault, on the ground that the court was without jurisdiction to make such an award. The affidavits and testimony offered in support of and against the motion indicated that the plaintiff and defendant, during the pendency of the divorce action, had entered into a written agreement whereby the plaintiff agreed that the decree might make provision

for the payment of alimony to the wife. The defendant claimed that, in reliance on such an agreement, she failed to oppose the divorce action. In this respect, the court held that such an agreement savored of collusion, was opposed to public policy and was a fraud upon the court. However, by reason of the fact that neither party was seeking to set aside the decree so far as it granted the divorce, the court felt that, in the circumstances under which the decree was obtained, it would be unjust to annul that part of the decree awarding alimony and to permit the remainder of the decree to stand.

In the case at bar there was no contract between the parties, from all that appears in the record. The plaintiff voluntarily conveyed to the defendant his interest in their home property and voluntarily promised to pay her $20 per month for her maintenance. There was no consideration for such a promise, nor was it made to appear that the defendant was persuaded not to defend the divorce suit by reason of these voluntary promises. All that the defendant's affidavit contains in this connection is that, while the divorce suit was pending, she called at the office of plaintiff's then attorney, and that he informed her that Mr. Garner felt she was entitled to something in the way of alimony and had instructed him to make arrangements to have the decree include a provision for payment to her of $20 a month. Parenthetically, it should be observed that Mary's letter to Joseph indicates that, at the time it was written, she conceded plainly that she was in fault.

■■ It is asserted that a party who procures the entry of a decree, or is responsible for error therein, is estopped to assert, on appeal, that it is erroneous.

As a general proposition of law, this is true. Where, however, the court rendering the decree acted without jurisdiction, or even in excess of its jurisdiction, the decree is void either in whole or in part, as the case may be. *Schoren v. Schoren,* 110 Or. 272, 214 P. 885, 222 P. 1096, cited by respondent in this connection, was a case in which the court, in its decree, adopted the provisions of an oral stipulation of the parties made in open court in settlement of their property rights. It does not appear that payment of alimony to the unsuccessful party was involved. Estoppel was invoked against the plaintiff by reason of the fact that the decree was a consent decree based upon an oral stipulation of the parties in open court. It was held that such a decree was not appealable, independently of the question of whether or not the pleadings sufficiently raised issues on which it could have been based. It is to be noted that the court was dealing with a true consent decree. In the case at bar, however, as we have pointed out, no contract or stipulation of the parties was involved.

 A consent judgment is defined as "a contract of the parties acknowledged in open court and ordered to be recorded, an agreement of the parties entered of record with the approval of a court of competent jurisdiction, or a solemn contract or judgment of the parties put on file with the sanction and permission of the court." 49 C. J. S., Judgments, section 173. Where the court is without jurisdiction of the subject matter involved in a particular case, jurisdiction cannot be conferred by consent, agreement, or other conduct of the parties. 21 C. J. S., Courts, section 85; 14 Am. Jur., Courts, section 184; *Skyles v. Kincaid,* 124 Or. 443, 453, 264 P. 432; *State ex rel. Kahn v. Tazwell,*

125 Or. 528, 543, 266 P. 238, 59 A. L. R. 1436; *Stretch v. Murphy,* 166 Or. 439, 448, 112 P. (2d) 1018.

"* * * a court's acts in excess of its jurisdiction are void, even if it has jurisdiction of the subject matter of the action and of the parties, as where a court of special or limited jurisdiction exceeds its power. * * *" 21 C. J. S., Courts, section 116.

See also 14 Am. Jur., Courts, section 191.

 The jurisdiction of the circuit courts in divorce proceedings, as defined by statute, cannot, in our opinion, be enlarged or diminished by any agreement of the parties. There was no jurisdiction in the court in the instant case to award alimony to the party in fault, and such award must be considered as having been an act of the court in excess of its jurisdiction and, therefore, void.

"Excess of jurisdiction may be defined as the state of being beyond or outside the limits of jurisdiction, and, as distinguished from the entire absence of jurisdiction, means that the act, although within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting, and hence the judicial power is not in fact lawfully invoked. Although a court may have jurisdiction of the subject matter and the parties, its act or order may, nevertheless, be in excess of its jurisdiction, as being something which it has no power to do; and it has been said that any act of a court in violation of statutory prohibition may be considered to be in excess of jurisdiction." 21 C. J. S., Courts, section 25.

The order appealed from is reversed, and the cause

is remanded with directions to amend the original decree in the cause by deleting therefrom all provisions for the payment of permanent alimony. No costs will be awarded to either party.

WINSLOW, former justice pro tem, did not participate in this opinion.

KELLY, J. (Dissenting in part.)

As concerns the question in the case at bar, which is, whether the portion of the decree awarding defendant alimony should be annulled, I can see no controlling distinction between the procedure approved in *Crumbley v. Crumbley* and that which was approved in *Griffith v. Griffith*.

In the Crumbley case, as stated in the opinion of the majority in the case at bar, the decree granted a divorce to the plaintiff and made a disposition of the real property to the parties. The plaintiff appealed from that portion of the decree only which declared defendant to be the owner of certain parcels of land. This court examined the whole record, but only to determine whether plaintiff was equitably entitled to further relief.

In the Griffith case, the defendant defaulted. Plaintiff paid alimony for two years under the portion of the decree awarding alimony and then defaulted. For such default, plaintiff was adjudged to be in contempt of court. To determine whether there was an erroneous exercise of jurisdiction, this court held that the entire record of the divorce case should be available.

In the case at bar, plaintiff did not appeal from the decree of divorce; but in my opinion access to the record upon which that decree is based including the award to defendant of alimony should not be denied. Accord-

ing to my view, this rule permitting a reexamination of the entire record of the divorce case is necessary to determine the course to be taken in accordance with justice, equity and fairness; whether the issue arises by appeal prosecuted by plaintiff from a portion of the decree, or by appeal from a contempt order prosecuted by defendant, or, as in the case at bar, an appeal by plaintiff from an order upholding plaintiff's liability for the unpaid portions of alimony accruing up to and including October 9, 1946.

For this reason, I dissent from the portion of the opinion overruling in part the opinion in *Griffith v. Griffith,* but otherwise concur in the result of the majority opinion.